**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>RONNIE MORENO,<br><br>                Defendant. | Case No. 3:16-cr-00032-SLG |

## ORDER REGARDING 28 U.S.C. § 2255 MOTION
## (CLAIMS 1(a) and 2(a))

Before the Court at Docket 117 is defendant Ronnie Moreno's Amended 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody and his memorandum in support of the amended motion. The government opposed the motion at Docket 124. Mr. Moreno filed a reply at Docket 125. The Court previously issued an order denying 11 of the claims raised by the motion.[1] This order addresses the two remaining claims.

The Court held an evidentiary hearing on October 27, 2021, and November 3, 2021. Four witnesses testified: Mr. Moreno's first trial counsel Matthew Scoble,[2] former Assistant U.S. Attorney Timothy Edmonds, Mr. Moreno's second

---

[1] Docket 126.

[2] Judge Scoble is currently the Chief Magistrate Judge for the District of Alaska. However, because his association with this case is from his time as an Assistant Federal Public Defender and because he testified in that capacity, the Court refers to him in this order as Mr. Scoble.

trial counsel D. Scott Dattan, and Mr. Moreno.  After the hearing, the government filed proposed findings of fact and conclusions of law at Docket 186.  Mr. Moreno filed proposed findings at Docket 187.  Having considered each parties' filings and exhibits, the hearing testimony, and the record in this case, the Court now makes the following findings and conclusions as to the two remaining § 2255 claims.

## I.    Background

The Court has previously set forth the procedural background of this case at Docket 126.  As relevant here, on April 4, 2016, the government filed a criminal complaint against Ronnie Moreno.[3]  On April 13, 2016, Mr. Moreno waived a preliminary hearing and waived indictment.[4]  On April 15, 2016, Mr. Moreno was charged by Information with one count of Drug Conspiracy in violation of 21 U.S.C. § 846.[5]  Approximately one month later, on May 19, 2016, Mr. Moreno signed a written plea agreement, in which he agreed to plead guilty to the Drug Conspiracy count.  The following month, on June 16, 2016, Mr. Moreno appeared in court and entered a guilty plea.[6]  At the time, Mr. Moreno was represented by attorney Matthew Scoble.  Prior to sentencing, attorney Scoble was removed

---

[3] Docket 1.

[4] Docket 11; Docket 12.

[5] Docket 14.

[6] Docket 19 (plea agreement); Docket 22 (minute entry).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))

from the case and replaced with attorney D. Scott Dattan.[7]  In February 2017, the Court sentenced Mr. Moreno to 120 months imprisonment.[8]  In his § 2255 motion, Mr. Moreno asserts that attorney Scoble entered into a verbal plea agreement with AUSA Timothy Edmonds on April 5, 2016, in which the government agreed that it would not recommend a sentence longer than the five-year mandatory minimum.[9]

This order addresses two claims related to the purported verbal plea agreement: **Claim 1(a)** alleges ineffective assistance of both Mr. Scoble and Mr. Dattan for failing "to object or otherwise challenge the government's breach of the Oral Promises made to me related to the Plea Agreement."[10]  **Claim 2(a)** alleges ineffective assistance of appellate counsel for failing to raise on appeal the government's "Breach of the Oral Promissory Plea Agreement."[11]

---

[7] Docket 35 (minute entry); Docket 36 (sealed minute entry); Docket 38 (Notice of Attorney Appearance).

[8] Docket 71 (Judgment).

[9] *See* Docket 117-1 at 4.  *Cf.* Docket 95 at 1 ("[B]y April 5th 2016 petitioner accepted an Oral Promissary [sic] Plea Agreement for two (2) years, two (2) months of actual incarceration for a no more than 60 month total sentence . . . .").

[10] Docket 117 at 4.

[11] Docket 117 at 5.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 3 of 28

## II. Legal standard

In order to succeed on an ineffective assistance of counsel claim, Mr. Moreno must satisfy the two-pronged test set forth in *Strickland v. Washington*, which requires him to show both deficient performance of counsel and resulting prejudice.[12] Deficient performance requires a showing that trial counsel's representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms.[13] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[14] This standard applies even when the ineffective assistance claims arise out of the guilty plea process.[15] To show prejudice, Mr. Moreno must show that "there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different."[16] Failure to meet either prong is fatal to a defendant's claim.[17]

---

[12] 466 U.S. 668, 687 (1984).

[13] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

[14] *Strickland*, 466 U.S. at 689.

[15] *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985).

[16] *Strickland*, 466 U.S. at 694.

[17] *Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) ("Because failure to meet either prong is fatal to [a defendant's] claim, there is no requirement that [courts] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'" (quoting *Strickland*, 466 U.S. at 697)).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 4 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 4 of 28

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set forth in *Strickland*.[18]  To be constitutionally effective, "counsel need not appeal every possible question of law."[19]  A failure to raise untenable issues on appeal does not fall below the *Strickland* standard.[20]

Mr. Moreno carries the burden of proving he is entitled to relief.[21]  Mr. Moreno seeks to have his sentence vacated, have this Court order specific performance of the purported oral plea agreement, and to be resentenced before a different judge.[22]

## III.  Evidence of the plea-bargaining process and sentencing in this case

Claim 1(a) includes Mr. Moreno's assertion that Mr. Scoble was ineffective for not enforcing a purported verbal plea agreement between Mr. Scoble and AUSA Edmonds that the government would recommend no more than a five-year sentence.  At the evidentiary hearing, Mr. Scoble testified that he and AUSA Edmonds "charge bargained" the case prior to an information being filed; the

---

[18] *Turner v. Calderon*, 281 F.3d 851, 871 (9th Cir. 2002).

[19] *Id.* (citations omitted).

[20] *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991).

[21] *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002).

[22] Docket 117-1 at 30; Docket 187 at 22.  *See also United States v. Travis*, 735 F.2d 1129, 1132 (9th Cir. 1984) ("Where the government violates a plea agreement at sentencing, the usual remedy is a remand for resentencing.").

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 5 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 5 of 28

result was that the government charged the case in a manner that carried a five-year mandatory minimum instead of a ten-year mandatory minimum.[23]  Several days before Mr. Moreno waived indictment and was arraigned on the information, he and Mr. Scoble attended a proffer session with various state and federal government agents in the hopes of receiving a sentence reduction.[24]

Mr. Moreno signed a plea agreement on May 19, 2016.[25]  A week later, on May 26, 2016, Mr. Scoble learned from AUSA Edmonds that the government was not going to make a motion for a § 5K1.1 sentence reduction; Mr. Scoble relayed this to Mr. Moreno.[26]  Mr. Scoble testified that Mr. Moreno was very upset at learning he would not be getting a reduction, and Mr. Moreno told Mr. Scoble that he had been "promised" a 50% reduction.[27]  Despite knowing he would not get a reduction for substantial assistance, and despite being told by Mr. Scoble that he

---

[23] Docket 188 at 20.  Mr. Scoble testified that he and AUSA Edmonds charge bargained Mr. Moreno's case by agreeing that Mr. Moreno would be "pleading to an information and that the way he would be charged in the information would limit his mandatory minimum to ten years or five years—five years instead of ten years."  Docket 188 at 20.

[24] Docket 189 at 4–5.  The proffer session occurred on April 12, 2016.  Mr. Moreno was charged by information on April 15, 2016.

[25] Docket 19.

[26] Docket 189 at 14–16.

[27] Docket 189 at 13, 29–31.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 6 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 6 of 28

did not have to plead guilty, Mr. Moreno proceeded to enter a guilty plea on June 16, 2016.[28]

Mr. Scoble testified that after the change of plea hearing, Mr. Moreno began expressing to Mr. Scoble that he believed Mr. Scoble had lied by telling him that the government would not request a sentence of longer than five years.[29] Mr. Moreno also expressed distrust of Mr. Scoble for other reasons. Due to the deterioration of the attorney-client relationship, Mr. Scoble moved for status of counsel hearings on June 11, 2016, and August 17, 2016.[30] In his declarations of counsel in support of his motions for those hearings, Mr. Scoble indicated that "Mr. Moreno believes that counsel forced him into a plea agreement, the terms of which he was not satisfied with"[31] and that Mr. Moreno was "claiming that counsel had misrepresented the terms of the plea agreement to him[.]"[32] At the second status of counsel hearing, on August 30, 2016, Mr. Scoble was withdrawn as counsel.[33]

---

[28] Gov. Exh. 1 at 2, 3.

[29] Docket 188 at 50–51; *see also* Gov. Exh. 1 at 4.

[30] Docket 26; Docket 32.

[31] Docket 24 at 2 (under seal).

[32] Docket 33 at 2 (under seal).

[33] Docket 35; Docket 36 (under seal); Docket 37 (ex parte).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 7 of 28

## A. Evidence of the proffer agreement

Mr. Scoble testified that his practice was to advise proffering clients that a proffer was not a guarantee of any sentence reduction, that the largest reduction a defendant could receive was 50% but that he had never seen that large of a reduction, and that getting more than a 5% or 10% reduction was unusual.[34]  Mr. Scoble testified that never in his career had he advised a client that the client would receive a 50% § 5K1.1 reduction after only one proffer session.[35]  Mr. Scoble also testified about the proffer letter he and Mr. Moreno had signed prior to the proffer session.[36]  The proffer letter emphasizes that "entering into this agreement does not operate as a guarantee that any sentence you may receive will be reduced in any way even if you comply with all of its conditions."[37]  Notably, Mr. Scoble testified that "Mr. Moreno knew before he pled guilty on June 16th that the government was not intending to give him 5K credit."[38]  Although there

---

[34] Docket 189 at 13–14, 31; Docket 188 at 57.

[35] Docket 189 at 31.

[36] Docket 189 at 8.

[37] Gov. Exh. 15 at 3.

[38] Docket 189 at 29.  *Accord* Docket 189 at 29–30 ("[T]here is not a doubt in my mind that I explained to him prior to his changing his plea that he would not be getting a 5K recommendation."); Docket 189 at 31–32 ("I reminded him he was under no obligation to change plea if he didn't want to.  [Mr. Moreno] confirmed that he did want to change plea.").

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 8 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 8 of 28

was a proffer agreement in this case, Mr. Moreno did not enter into a cooperation agreement with the government.[39]

Mr. Moreno testified that at the proffer session he was told "that anything I told them or gave them could not be used against me nor would it be left---nor would it be left out of the room.  They cannot use it to give me any more charges or anything."[40]

## B. Evidence of a purported verbal plea agreement for a five-year recommendation

At the evidentiary hearing, Mr. Scoble testified that on April 19, 2016, he prepared a memorandum in this case and discussed it with Mr. Moreno.[41]  The memorandum does not state that Mr. Scoble had made a plea deal with AUSA Edmonds that included a recommendation by the government no more than a five year sentence, although the memorandum does note the five-year mandatory minimum.[42]  Mr. Scoble also testified regarding the notes that he had made during a jail visit May 10, 2016, that he had with Mr. Moreno prior to signing the plea agreement.[43]  The handwritten notes contain no reference to a five-year

---

[39] *See* Docket 20 (sealed plea agreement addendum stating that "[t]here is no addendum to the plea agreement").

[40] Docket 190 at 47–48.

[41] Docket 188 at 38–39.

[42] *See* Def. Exhibit B at 8–9 (Interoffice Memorandum dated Apr. 19, 2016).

[43] Docket 188 at 29–31.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 9 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 9 of 28

sentencing recommendation by the government, although they appear to note the five-year mandatory minimum.[44]  Indeed, if Mr. Scoble believed there was an oral agreement for a government recommendation of no more than five years made on April 5, 2016, it seems highly unlikely that he would have written a memorandum outlining potential sentencing exposure  of 70 to 115 months on April 19, 2016, or would have made rough Sentencing Guidelines calculations of 60 to 87 months during a jail visit with Mr. Moreno on May 10, 2016.[45]  Finally, Mr. Scoble testified regarding a declaration he signed approximately four months after withdrawing as counsel for Mr. Moreno.[46]  The declaration states that Mr. Scoble "engaged in plea negotiations" with AUSA Edmonds, that the "negotiations resulted in the written plea agreement," and that "[t]here were no agreements between the parties apart from what is set forth in that written plea agreement."[47]  Mr. Scoble testified that the assertion "that there were no agreements between the parties" other than as stated in the written plea agreement was "absolutely true."[48]  Mr. Scoble also testified that he "explain[ed]

---

[44] *See* Def. Exhibit B.

[45] Def. Exh. B at 6, 8–9.  The rough estimate of the Guidelines range was inaccurate.  The Guidelines range found by the Court was 100–125 months.  Docket 72 at 1 (sealed Statement of Reasons).

[46] Docket 188 at 33–35.

[47] Gov. Exhibit 13.

[48] Docket 188 at 46.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 10 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 10 of 28

the plea agreement to [Mr. Moreno] in detail" as reflected in his contemporaneous log notes from the case.[49]

Former AUSA Edmonds testified about a "plea agreement cover sheet" that he prepared for his supervisor's review dated May 11, 2016.[50]  The cover sheet proposes a sentencing recommendation of five years.[51]  Mr. Edmonds testified that it is possible that a notation by his supervisor on the plea agreement cover sheet required that he change that sentencing recommendation before making the offer to the defense.[52]  Mr. Edmonds could not recall his plea agreement discussions with Mr. Scoble.  There was no evidence presented that the plea agreement cover sheet was ever provided to Mr. Scoble.

Mr. Moreno testified that when he was arrested at the Anchorage airport on April 2, 2016, DEA Agent Pawlak told him that he "was being charged with a ten-year mandatory minimum for drug conspiracy.  He told me that if I cooperate

---

[49] Docket 189 at 29; Gov. Exh. 1 at 2.

[50] Docket 188 at 62.

[51] Def. Exh. A at 4.

[52] Docket 188 at 70.  Handwritten on the cover sheet are the supervisor's initials followed by an illegible notation, which the government suggested reads "w/change."  A hand-drawn line connects the notation to the bottom of the page, where AUSA Edmonds had typed "5 yrs imprisonment." The words "5 yrs" were circled by the supervisor.  The supervisor's notation appears to have been made on May 11, 2016.  The government suggests this notation indicates that AUSA Edmonds' supervisor required him to change the five-year recommendation before making the plea offer to the defense.  Docket 188 at 70.  That AUSA Edmonds' supervisor required a change from the five-year recommendation is consistent with the government's recommendation of a 120-month sentence at the imposition of sentence hearing.  Docket 44 at 2; Docket 87 at 20.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 11 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 11 of 28

and gave information about a murder case, they can reduce the sentence up to 15---up to 50 percent."[53]  Mr. Moreno testified that this was a promise made to him by Agent Pawlak regarding getting a 50% reduction for cooperation.[54]

Mr. Moreno testified that at his arraignment on April 5, 2016, "Mr. Scoble agreed to waive the grand jury indictment and trial for a max sentence of five years" and that he, Mr. Moreno, "accepted the oral promissory plea of a five-year sentence."[55]  Mr. Moreno also testified that at his arraignment, Mr. Scoble and AUSA Edmonds both told the Court that there was an oral agreement to settle the case.[56]  Mr. Moreno believed that "the five-year max sentence became official on April 5" and that if he cooperated with the government "they can knock off 50 percent of the mandatory minimum, which was the mandatory minimum of five [years]."[57]

Mr. Moreno also testified that Mr. Scoble did not review or discuss the written plea agreement with him, but that Mr. Scoble told him that it was "a

---

[53] Docket 190 at 43.

[54] Docket 190 at 55.

[55] Docket 190 at 44.

[56] Docket 190 at 43–44.  *Accord* Docket 190 at 58–59 ("So after we agreed to this, then we went to court and the judge asked Edmonds if I was waiving the grand jury indictment and trial for some type of agreement and if he agreed with Scoble, and he said yes.").  *But see* discussion *infra* at Part IV regarding review of transcript of arraignment.

[57] Docket 190 at 44.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 12 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 12 of 28

generic plea" and that it was "a generic five-year deal."[58]  Mr. Moreno testified

that Mr. Scoble told him that "all the letters and numbers" in the written plea

agreement did not mean anything because AUSA Edmonds "personally assured

him that he's not going to ask for a day over five years and this is just a generic

plea that they give to everybody."[59]  Mr. Moreno also testified that when he told

Mr. Scoble that he wanted to take the written plea agreement to read back in the

jail, Mr. Scoble told him not to take it and review it because they had court the

next day.[60]

The record of prior hearings is also evidence in this case.  At Mr. Moreno's

change of plea hearing on June 16, 2016, he testified that he had read the plea

agreement, understood it, and had discussed it with Mr. Scoble.[61]  Mr. Moreno

also testified that Mr. Scoble had answered all of the questions he had about the

case.[62]  Mr. Moreno testified that he understood that the possible sentence he

---

[58] Docket 190 at 48–51.

[59] Docket 190 at 51.  *Accord* Docket 190 at 53 ("[H]e just told me that it doesn't mean anything and Edmonds personally assured him that he was not going to ask for a day over five years because I already had the five-year max plea and just to sign it.").

[60] Docket 190 at 51.

[61] Docket 61 at 8–9.  Moreover, Mr. Moreno's original § 2255 motion also asserted that Mr. Scoble did not "inform Moreno of any use of prior convictions, leadership role, or probation or parole enhancements, before Moreno's plea of guilty . . . ." that occurred on June 16, 2016. Gov. Exh. 12 at 37.  This assertion is contradicted by Mr. Scoble's notes.  *See* Gov. Exh. 1 at 2 (May 19, 2016 note detailing conversation about how prior convictions and probation affect Mr. Moreno's criminal history score).

[62] Docket 61 at 7.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 13 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 13 of 28

could receive ranged from five to forty years.[63]  When Mr. Scoble and AUSA Edmonds informed the Court that there were no other formal offers to resolve the case apart from the written plea agreement, Mr. Moreno did not attempt to notify the Court of any verbal plea agreements or promises.[64]  To the contrary, Mr. Moreno testified that no one had "promised or guaranteed" him anything that was not contained in the written plea agreement signed by him, filed in the record, and reviewed with the Court at the change of plea hearing.[65]

### C. Evidence regarding sentencing counsel

Claim 1(a) also includes Mr. Moreno's assertion that Mr. Dattan was ineffective for not arguing at sentencing that the government had breached a verbal plea agreement that it would recommend a five-year sentence.

The bulk of Mr. Dattan's testimony focused on his understanding of the difference between a "cooperation agreement"—entered into to possibly gain a § 5K1.1 sentencing reduction and then filed under seal as an addendum to a plea agreement—and a "proffer agreement," which is effectively an immunity agreement.  Mr. Dattan testified that the agreement Mr. Moreno, Mr. Scoble, and the government signed on April 12, 2016,[66] was a proffer immunity agreement,

---

[63] Docket 61 at 12–13.

[64] Docket 61 at 7–8.

[65] Docket 61 at 16–17.

[66] *See* Gov. Exh. 15 (proffer letter).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 14 of 28

not a § 5K1.1 cooperation agreement.[67]  He emphasized that that agreement "does not suggest that [Mr. Moreno] will receive any specific sentence as a result of his cooperation.  This is an agreement that he will talk to the government and the government won't use his statements against him.  It's not an agreement for a sentence."[68]

Mr. Moreno did not testify about his communications with Mr. Dattan.

At the imposition of sentence hearing, Mr. Dattan notified the Court that Mr. Moreno believed that he had agreed to a sentence of five years, and that Mr. Scoble had provided a declaration that stated that "[t]here were no agreements between the parties, apart from what was set forth in that written plea agreement."[69]  Mr. Dattan also noted that Mr. Scoble's declaration "contrasts starkly with Mr. Moreno's reasoning, at least at this time, for entering into the plea agreement.  And he will tell you why he believes he was promised

---

[67] Docket 190 at 33–34.

[68] Docket 190 at 23.  *Accord* Docket 190 at 25 ("[T]hey had an agreement that he would come and talk and they would not use the statements against him."); Docket 190 at 27 ("I found no cooperation agreement.  And there isn't one that I have been able to find in the file.  There's a proffer letter that is an agreement not to use his statements against him as long as he remains truthful and doesn't testify differently."); Docket 190 at 32 (agreeing that "within the District of Alaska, [there is] commonly understood to be a difference between a proffer immunity agreement on the one hand versus a cooperation agreement on the other hand.").  *See also* Docket 20 (sealed plea agreement addendum stating that "[t]here is no addendum to the plea agreement."); Docket 61 at 16–17 (Mr. Moreno's testimony at the change of plea hearing that there were no promises or guarantees that influenced him to change his plea, other than what was in the written plea agreement.)

[69] Docket 87 at 26.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 15 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 15 of 28

a five-year sentence, which would be the mandatory minimum."[70]  After Mr. Dattan's sentencing presentation, Mr. Moreno made an allocution that spans approximately 34 transcript pages.  Mr. Moreno spent most of his allocution asserting that he was innocent of prior state court convictions and pending state court charges, and the Court and Mr. Dattan repeatedly had to redirect Mr. Moreno to address the case for which he was being sentenced.[71]  Despite his lengthy allocution and Mr. Dattan's earlier comment that Mr. Moreno would address why he believed there was an oral plea agreement during his allocution, Mr. Moreno never discussed why he believed he was promised a five-year sentence.  Only after the Court imposed a sentence of 120 months did Mr. Moreno interrupt and assert that "I had a five year deal---"[72]

### D. Evidence regarding appellate counsel

Claim 2(a) asserts that appellate counsel was ineffective for not raising on direct appeal the government's breach of the purported verbal plea agreement.  Resolution of this claim depends on some of the same fact-finding as does Claim 1(a)—specifically whether there was ever a binding plea agreement that included a five-year sentencing recommendation from the government.  The only

---

[70] Docket 87 at 27.

[71] Docket 87 at 37, 64, 65

[72] Docket 87 at 80.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 16 of 28

testimony presented regarding appellate counsel was Mr. Moreno's testimony that appellate counsel was ineffective because "he did not raise my arguments . . . to which I believe he now—he put an affidavit saying that he messed up."[73] The Court has reviewed appellate counsel's affidavit, which does not say that he "messed up" but instead merely states that he did not receive certain documents from Mr. Dattan when he took over the case for appeal.[74]

## IV. Credibility findings

Having reviewed the record in this case, the Court finds that Mr. Moreno's testimony at the evidentiary hearing was not credible. Mr. Moreno's testimony was considerably at odds with the contemporaneous written documents, his own testimony at prior court proceedings, and with the other evidence presented at the evidentiary hearing. Several examples follow:

Mr. Moreno testified at the evidentiary hearing that at his first appearance, on April 5, 2016, Mr. Scoble and AUSA Edmonds told the Court that they had reached a plea deal in exchange for a waiver of indictment. But there was no discussion of any waiver or any agreement on the record with the Court at the April 5, 2016 initial appearance; in fact, at that hearing AUSA Edmonds told the Court that the potential sentence in this case was a "mandatory minimum of five

---

[73] Docket 190 at 79.

[74] Def. Exh. F.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 17 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 17 of 28

years to 40 years of imprisonment."[75]  At a preliminary hearing on April 13, 2016, Mr. Moreno made a waiver of the preliminary hearing and waiver of indictment; but again there was no discussion of there being any agreement regarding sentencing.[76]  And at the arraignment on April 18, 2016, there again was no discussion of any oral plea agreement regarding sentencing.[77]  At a pretrial conference on May 20, 2016, there was no discussion with the Court of any oral plea agreement regarding sentencing.[78]  The Court has also reviewed AUSA Edmonds' and Mr. Scoble's notes from each of those hearings, none of which reference any plea deal being made before or during those hearings.[79]  Moreover, Mr. Edmonds testified persuasively that he had no authority to enter

---

[75] Docket 56 at 3 (transcript of April 5, 2016).

[76] Docket 58 at 2–3 (transcript of April 13, 2016).

[77] Docket 59 (transcript of April 18, 2016).

[78] Docket 60 (transcript of May 20, 2016).

[79] Def's Exh. A, B.  Mr. Moreno has inconsistently described what the "deal" was that he made. In his habeas motion, Mr. Moreno wrote that on April 5, 2016, *he* made an offer to waive indictment and trial "to save the tax payers some money, so that Moreno can still be a father to his daughter," and that *Mr. Scoble*—"government/state paid counsel"—accepted his offer on behalf of the government.  Gov. Exh. 12 at 11–12.  Mr. Moreno then explained that later that day *AUSA Edmonds* made an offer that would result in Mr. Moreno only serving two years, two months, and Mr. Moreno accepted that deal.  Gov. Exh. 12 at 12.  Mr. Moreno went on to write that he waived indictment and trial at his first appearance on April 5, 2016, in exchange for a reduction of the mandatory minimum to five years, which, according to Mr. Moreno, "clearly establishes that the parties agreed to a no more tha[n] five years deal, with no more than two years, two months of actual incarceration."  Gov. Exh. 12 at 12.

*See also supra* note 23.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))

into a plea agreement without the approval of his supervisor at the U.S. Attorney's Office.[80]

As to Mr. Moreno's testimony that Mr. Scoble never reviewed the plea agreement with him and lied to him about the contents and meaning of the written plea agreement, a review of the transcript of Mr. Moreno's change of plea hearing belies his claims of ineffective assistance of counsel related to his understanding of the plea agreement. At Mr. Moreno's change of plea hearing on June 16, 2016, he testified that he had read the plea agreement, understood it, discussed it with Mr. Scoble, and that Mr. Scoble had answered all of the questions he had about the case.[81] Mr. Moreno testified then that he understood that the possible sentence he could receive ranged from five to forty years.[82] Mr. Moreno testified that no one had "promised or guaranteed" him anything that was not contained in the written plea agreement signed by him, filed in the record, and reviewed with the Court at the change of plea hearing.[83]

---

[80] Docket 188 at 72.

[81] Docket 61 at 7–9. Moreover, Mr. Moreno's original § 2255 motion also asserted that Mr. Scoble did not "inform Moreno of any use of prior convictions, leadership role, or probation or parole enhancements, before Moreno's plea of guilty . . . ." that occurred on June 16, 2016. Gov. Exh. 12 at 37. This assertion is contradicted by Mr. Scoble's notes. *See* Gov. Exh. 1 at 2 (note from May 19, 2016, detailing conversation about how prior convictions and probation affect Mr. Moreno's criminal history score).

[82] Docket 61 at 12–13.

[83] Docket 61 at 16–17. In *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977), the Supreme Court recognized the considerable weight to be accorded to testimony from the original plea hearing:

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 19 of 28

Case 3:16-cr-00032-SLG    Document 191    Filed 01/14/22    Page 19 of 28

As to Mr. Moreno's testimony that Mr. Scoble did not allow him to take a copy of the plea agreement back into the jail to review, this testimony is contradicted by Mr. Scoble's contemporaneous notes that show that on May 19, 2016, Mr. Scoble visited Mr. Moreno in jail, explained the plea agreement to him "in det[ail]," and left Mr. Moreno "with a copy."[84] Mr. Moreno also signed the plea agreement on that same date, May 19, 2016.[85] Due to the inconsistencies and contradictions between the record in this case and Mr. Moreno's recent testimony, the Court finds that Mr. Moreno's material testimony at the evidentiary hearing is wholly incredible.

The Court further finds Mr. Scoble's testimony at the evidentiary hearing as to the plea negotiations, proffer agreement, and plea agreement in this case to be credible. The Court also finds Mr. Dattan's testimony and Mr. Edmonds' testimony at the evidentiary hearing to be credible. The Court finds that the

---

For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

The Ninth Circuit recently noted that "[b]ecause the sworn statements during the plea colloquy 'speak[] in terms of what the parties in fact agree to,' they 'carry a strong presumption of truth.'" *United States v. Jackson*, ___ F.4th ___, 2022 WL 16874, at *5 (9th Cir. Jan. 3, 2022) (quoting *United States v. Benchimol*, 471 U.S. 453, 455 (1985)).

[84] Def. Exh. 1 at 2.

[85] Docket 19 (copy of plea agreement).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))

written documentation, Mr. Moreno's previous testimony, and counsels' representations to the Court fully support Mr. Scoble's, Mr. Dattan's, and Mr. Edmonds' testimony.

## V. Ineffective assistance of counsel

The Court finds that Mr. Moreno has not carried his burden of showing that any of his counsel's representation "fell below an objective standard of reasonableness" as measured by prevailing professional norms.[86]

### A. Plea counsel (Mr. Scoble)

The Court finds that there was no oral plea agreement between Mr. Scoble and AUSA Edmonds and no oral promises made to Mr. Moreno that the government would make a sentencing recommendation of not more than five years. There is next to nothing in the record before the Court, other than Mr. Moreno's recent testimony, to support a finding of such an oral plea agreement. On the contrary, the record—including Mr. Scoble's and AUSA Edmonds' contemporaneous file notes, the written plea agreement,[87] Mr. Moreno's

---

[86] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688).

[87] The written plea agreement is fully integrated; the agreement expressly states that "[t]here are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, I and the United States will jointly inform the Court in writing before I enter my guilty plea." Docket 19 at 11–12.

In *United States v. Jackson*, ___ F.4th ___, 2022 WL 16874, at *7 (9th Cir. Jan. 3, 2022), the Ninth Circuit declined to consider extrinsic evidence of a purported verbal plea agreement when the written plea agreement was "unambiguous, fully integrated, and expressly

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 21 of 28

Case 3:16-cr-00032-SLG    Document 191    Filed 01/14/22    Page 21 of 28

testimony at his change of plea hearing,[88] and counsels' testimony at the evidentiary hearing—strongly supports the conclusion that the written plea offer was the only plea agreement between the parties. Because there was no verbal plea agreement or other verbal government promises, Mr. Scoble was not ineffective for "fail[ing] to object or otherwise challenge the government's breach of the Oral Promises to [Mr. Moreno] related to the Plea Agreement."[89]

The Court also finds that there was no agreement that Mr. Moreno would receive any reduction in sentence—let alone a 50% reduction—in exchange for proffering information. Mr. Moreno has repeatedly indicated via testimony and writings that it was DEA Agent Pawlak who told him that his sentence could be reduced by up to 50%.[90] When asked whether Mr. Scoble told him he could

---

disclaim[ed] the existence of other promises."

[88] *See Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) and *United States v. Jackson*, ___ F.4th ___, 2022 WL 16874, at *5 (9th Cir. Jan. 3, 2022).

[89] Docket 117 at 4.

[90] Docket 190 at 43, 44, 45, 55, 72, 75; Gov. Exh. 1 at 2 (Mr. Scoble's note dated May 31, 2016, indicates that Mr. Moreno believed that Agent Pawlak's purported promise trumped the signed proffer letter: "He believes . . . any oral promises the agents made to him control, not what is in the proffer letter"). Other parts of the record also support the conclusion that if Mr. Moreno was in fact ever told that he could receive a 50% sentence reduction, it was by Agent Pawlak. *See* Docket 63 at 2 (Mr. Moreno's statement to the Court that "when I was arrested, I immediately accepted responsibility and made a deal with Rick Pawlock and Rick Rambo . . . .) (ex parte); Docket 66 at 6 (Mr. Moreno's statement to the Court that "I was told when I was arrested that for not going to the grand jury indictment and not going to trial, I was going to get a five-year mandatory minimum sentence. I agreed to that. After that, I was also told that if I gave information about a murder case, that I would get additional assistance at sentencing.") (ex parte).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 22 of 28

receive a 50% sentence reduction for cooperating, Mr. Moreno testified that it was Agent Pawlak who gave him that information, not Mr. Scoble.[91]  However Agent Pawlak had no authority to make binding promises to defendants and was not a party to the proffer agreement in this case.  Notably, the proffer agreement signed by Mr. Moreno, Mr. Scoble, and AUSA Edmonds emphasizes that "entering into this agreement does not operate as a guarantee that any sentence you may receive will be reduced in any way even if you comply with all of its conditions" and that whether the information "amounts to substantial assistance to the government is solely within the discretion of the United States."[92]

### B. Sentencing counsel (Mr. Dattan)

Throughout the course of this litigation, Mr. Moreno has altered his allegation of ineffective assistance as it relates to Mr. Dattan.  Mr. Moreno's amended § 2255 motion asserted that Mr. Dattan was ineffective for not enforcing the purported oral promises made "related to the Plea Agreement."  The memorandum in support of Mr. Moreno's amended motion expressly details what the terms of those purported oral promises were:

> Later in the day, Scoble returned to movant from talking to the prosecutor, Edmonds, and told movant, that he was lucky and that Edmonds agreed and offered to drop the mandatory minimum from ten (10) years, to five (5) years; and that on five years, with good time, at about 85%, movant would have to do about four years two

---

[91] Docket 190 at 44–45.

[92] Gov. Exh. 15 at 3.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 23 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 23 of 28

months. With a completed R.D.A.T. drug class, an additional one year would be knocked off, leaving about three (3) years, two (2) months. In addition, Scoble told movant that he would probably go to the halfway house for about one (1) year, so he would only be actually incarcerated for about two (2) years. Movant told Scoble that he accepted the offer of two (2) years, two (2) months of actual incarceration for a no more than 60- month total sentence for waiving the grand jury indictment and trial.[93]

Notably, nothing in Mr. Moreno's amended § 2255 motion or memorandum mentions an oral promise for a 50% reduction for cooperating with the government, and the purported promises quoted above do not include any calculation of a reduction for cooperation. Thus, nothing in Mr. Moreno's amended motion or memorandum asserts that Mr. Dattan was ineffective for not raising to the sentencing court the fact that Mr. Moreno had participated in a proffer session.

Now, Mr. Moreno asserts that Mr. Dattan's "failure to bring [the] plea-breach claim to the district court's attention at sentencing constituted ineffective assistance."[94] Mr. Moreno seeks to classify the proffer agreement as a part of the plea agreement and then fault Mr. Dattan for not discovering the proffer agreement and not presenting it to the Court at sentencing,[95] despite Mr. Scoble telling Mr. Moreno in May 2016 that the government would not be making a §

---

[93] Docket 117-1 at 25–26.

[94] Docket 187 at 23 (defendant's Proposed Findings).

[95] Docket 187 at 18.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 24 of 28

Case 3:16-cr-00032-SLG    Document 191    Filed 01/14/22    Page 24 of 28

5K1.1 reduction in its sentencing recommendation. Even assuming—without deciding—that Mr. Dattan performed deficiently, Mr. Moreno has not demonstrated how he was prejudiced. Mr. Moreno has presented no evidence in support of his assertion that "[h]ad Dattan discovered the proffer agreement he could reasonably have worked with the prosecutor to fill in the blanks and facilitate some kind of a § 5K1.1 motion."[96] Here, there was no cooperation agreement or an agreement for a possible § 5K1.1 reduction in sentence. Moreover, even if there had been such an agreement, Mr. Dattan testified that in the past five or ten years of his practice, he had not "been able to convince the government to change its mind with respect to conveying a benefit for cooperation."[97] This is bolstered by Mr. Scoble's testimony that once the government has decided not to give a substantial assistance reduction, "generally speaking, that's not really a point that can be negotiated, at least in my experience."[98]

Moreover, the government's sentencing memorandum supplement stated that there was no addendum to the government's publicly filed sentencing memorandum[99]—a fact that fully supports the conclusion that Mr. Moreno (while

---

[96] Docket 187 at 17.

[97] Docket 190 at 30.

[98] Docket 188 at 16.

[99] Docket 45 (under seal).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 25 of 28

Case 3:16-cr-00032-SLG    Document 191    Filed 01/14/22    Page 25 of 28

represented by Mr. Scoble) had made a proffer agreement with the government, not a § 5K1.1 cooperation agreement. The Court further finds that Mr. Dattan reasonably investigated Mr. Moreno's claim that there was another plea agreement: Mr. Dattan contacted Mr. Scoble to inquire about other plea agreements and obtained a declaration from Mr. Scoble that there was no plea agreement other than what was included in the written agreement.

Mr. Moreno also asserts that Mr. Dattan could have "challenge[d] the prosecutor's decision not to move for a § 5K1.1 sentencing reduction by moving the Court to enforce the agreement."[100] However, Mr. Moreno has not demonstrated that there was any § 5K1.1 agreement to enforce: The proffer agreement makes clear that Mr. Moreno was not guaranteed any sentence reduction in exchange for information. The only promise made to Mr. Moreno was that the information he provided at the proffer session would not be used against him. Mr. Moreno cites to *Wade v. United States* and *Santobello v. New York* for the premise that "the government's discretionary power to file a § 5K1.1 sentence reduction motion is subject to constitutional limitations that district courts can enforce" and that due process requires "that when a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, such promise must be fulfilled."[101] *Wade* in inapplicable here because Mr. Moreno has

_____

[100] Docket 187 at 17.

[101] Docket 187 at 18–19 (citing *Wade v. United States*, 504 U.S. (1992) and *Santobello v. New*

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 26 of 28

Case 3:16-cr-00032-SLG    Document 191    Filed 01/14/22    Page 26 of 28

not asserted, and there is no evidence, that the government's refusal to file a §

5K1.1 motion "was based on an unconstitutional motive" or "suspect reasons

such as his race or his religion."[102]   Indeed, *Wade* emphasizes that "a claim that

a defendant merely provided substantial assistance will not entitle a defendant to

a remedy" from the court.[103]   *Santobello* is also inapplicable because Mr. Moreno

has not demonstrated that there was any oral promise, side agreement, or §

5K1.1 agreement made by the government as to its sentencing recommendation

to be enforced in this case.

### C. Appellate counsel (Mr. Rodriguez)

The Court finds that appellate counsel did not perform deficiently by not

raising on appeal "the Breach of the Oral Promissory Plea Agreement."[104]   A

failure to raise untenable issues on appeal does not fall below the *Strickland*

standard.[105]

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that Claims 1(a) and 2(a) are

DENIED because Mr. Moreno has not shown that any of his counsel were

---

*York*, 404 U.S. 257 (1971)).

[102] 504 U.S. at 185–86.

[103] 504 U.S. at 186.

[104] Docket 117 at 5.

[105] *Feathersone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991).

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 27 of 28

ineffective. As to both of those claims, the Court finds that Mr. Moreno has not made the requisite substantial showing of the denial of a constitutional right; therefore, a certificate of appealability will not be issued by this Court.[106]  Mr. Moreno may request a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 14th day of January, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[106] 28 U.S.C. §§ 2255(d), 2253(c)(2).  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability may be granted only if applicant made a "substantial showing of the denial of a constitutional right," *i.e.*, a showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotations and citations omitted)).

The Court previously denied a certificate of appealability as to claims 1(b), 1(c), 2(b), 2(c), 3, 4(a), 4(b), 5, 6, 7, and 8.  Docket 126 at 17.

Case No. 3:16-cr-00032-SLG, *United States v. Moreno*
Order Re 28 U.S.C. § 2255 Motion (Claims 1(a) and 2(a))
Page 28 of 28

Case 3:16-cr-00032-SLG   Document 191   Filed 01/14/22   Page 28 of 28