IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

           Plaintiff,

      v.

RONNIE MORENO,

           Defendant.

Case No. 3:16-cr-00032-SLG-KFR

REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion for Compassionate Release, which seeks an order reducing his sentence.[1] Plaintiff and United States Probation and Pretrial Services ("Probation") both oppose.[2] Because Defendant has not demonstrated that extraordinary and compelling reasons warrant a sentence reduction or that the 18 U.S.C. § 3553(a) factors support such a reduction, the Court recommends that Defendant's Motion for Compassionate Release be DENIED without prejudice.

I.     Procedural History

In April 2016, Defendant Ronnie Moreno was arrested pursuant to a criminal complaint and charged by information with one count of Drug Conspiracy, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B).[3] In June 2016, Defendant pled guilty to the charged offense pursuant to a plea agreement.[4] In February 2017, the District Court sentenced Defendant to 120 months imprisonment followed by five years of supervised release.[5] Defendant, now age 49, is serving his term of custody at Anchorage Correctional Complex ("ACC"), an Alaska state prison, and has a

---

[1] Docs. 205, 216.
[2] Docs. 218, 219.
[3] Doc. 14.
[4] Doc. 22.
[5] Doc. 68.

scheduled release date of October 8, 2024.[6]

On October 10, 2023, Defendant filed a *pro se* Motion for Compassionate Release, along with numerous supporting exhibits.[7] The District Court referred the matter to this Court, which then appointed counsel to assist Defendant with his motion.[8] On December 13, 2023, Defense Counsel filed an Amended Motion for Compassionate Release.[9] The Court will refer to these two filings collectively as the "Motion."[10]

On December 13, 2023, the Government responded in opposition.[11] Probation filed a sealed memorandum regarding the Motion the following day.[12]

II. Legal Standard

A court generally may not correct or modify a prison sentence once it has been imposed, unless permitted by statute or by Federal Rule of Criminal Procedure 35.[13] 18 U.S.C. § 3582(c)(1), as amended by the First Step Act of 2018,[14] allows the Bureau of Prisons ("BOP") and certain inmates to move the district court for "a form of sentence modification," commonly referred to as compassionate release.[15] Section 3582(c)(1) authorizes a court to reduce a sentence upon a compassionate release motion if four conditions are met: (1) the defendant has exhausted his administrative rights; (2) "extraordinary and compelling reasons warrant" a sentence reduction; (3) the applicable factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction; and (4) a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

---

[6] Doc. 219 at 1.
[7] Doc. 205.
[8] Docs. 208, 209.
[9] Doc. 216 at 1.
[10] Defense Counsel indicates that the Amended Motion "incorporate[es]" and supplements Defendant's *pro se* Motion.
[11] Doc. 217. The Government later filed an amended response that supersedes its initial filing. Doc. 218.
[12] Doc. 219.
[13] *United States v. Penna*, 315 F.3d 509, 511 (9th Cir. 2003); *see also Dillon v. United States*, 506 U.S. 817, 824-25 (2010).
[14] *See* Pub. L. 115-391, 132 Stat. 5194, 5239 (2018).
[15] *See United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022).

The policy statement at U.S.S.G. § 1B1.13—"Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)"—used to apply only to compassionate release motions filed by BOP.[16] Therefore, it was not binding on district courts considering defendant-filed compassionate release motions.[17] On November 1, 2023, however, the Sentencing Commission amended the § 1B1.13 policy statement to apply to both BOP-filed and defendant-filed compassionate release motions.[18] As a result, the policy statement is now binding on a court considering any compassionate release motion.[19]

III. Discussion

A. Exhaustion

As a threshold matter, a court may consider a compassionate release motion only if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or if thirty days have elapsed since BOP has received a compassionate release request from the defendant.[20] Defendant notes that this exhaustion requirement may not apply to him because he is currently housed in a state facility, not a BOP facility, and therefore he has no way of seeking compassionate release in the manner prescribed by § 3582(c)(1)(A).[21] In any case, Defendant avers that he submitted a request for compassionate release to the "superintendent" at his facility on September 8, 2022,

---

[16] *See United States v. Aruda*, 993 F.3d 797, 801-02 (9th Cir. 2021) (evaluating the version of the § 1B1.13 policy statement that was in effect at the time).
[17] *Id.* (holding that although the policy statement was not binding on a district court considering a defendant-filed compassionate release motion, it could nevertheless "inform a district court's discretion").
[18] *See* U.S. Sent'g Guidelines Manual § 1B1.13(a) (U.S. Sent'g Comm'n 2023) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . .") (emphasis added); *id.* supplement to app. C, amend. 814 (U.S. Sent'g Comm'n 2023) (changing § 1B1.13(a) language to include defendant-filed motions and noting that this November 2023 amendment made the policy statement applicable to defendant-filed motions).
[19] *See United States v. Roper*, 72 F.4th 1097, 1100 (9th Cir. 2023) ("Congress has only placed two limitations directly on extraordinary and compelling reasons: the requirement that district courts are bound by the Sentencing Commission's policy statement . . . and the requirement that 'rehabilitation alone' is not extraordinary and compelling." (quoting *United States v. Chen*, 48 F.4th 1092, 1098 (9th Cir. 2022))).
[20] 18 U.S.C. § 3582(c)(1)(A).
[21] Doc. 216 at 4.

and that the request was denied that same month.²² The Government does not dispute the exhaustion issue.

The Court finds that Defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement. Because Defendant is an inmate in a non-BOP facility, he lacks any administrative remedies to exhaust.²³ Accordingly, the Court may proceed to consider the merits of the Motion.

### B. Extraordinary and Compelling Reasons

Defendant contends that several factors collectively constitute extraordinary and compelling reasons that merit a sentence reduction: (1) his medical circumstances; (2) the conditions of his confinement; (3) the need to care for his minor children and the children of his deceased brother; and (4) changes in the law since his sentencing.²⁴ The Court addresses each basis in turn before evaluating the circumstances as a whole.

#### 1. Medical circumstances

Defendant asserts that he is experiencing or has experienced various health issues, including rectal bleeding, "numerous" COVID-19 contractions, shortness of breath, pre-diabetes, high blood pressure, a "small stroke," deteriorating eyesight, cracked teeth, broken bones, and ligament and cartilage damage to his left knee that requires him to wear a brace.²⁵ In response, the Government primarily takes issue

---

²² Doc. 205-1 at 3; *see also* Doc. 205-13 at 1.
²³ *Cf. Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding in the context of the exhaustion requirement contained in the Prison Litigation Reform Act of 1995 that "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones"); *United States v. Morales*, No. 3:19-CR-00121 (KAD), 2020 WL 2097630, at *2 n.1 (D. Conn. May 1, 2020) (observing that the warden at a non-BOP facility "ha[d] no authority under the [First Step] Act to seek compassionate release"); *United States v. Tyson*, 487 F. Supp. 3d 1156, 1159-60 (D.N.M. 2020) (noting the parties' agreement that because the defendant was in state custody, he could not apply for compassionate release through BOP and therefore had satisfied the statutory exhaustion requirement).
²⁴ Defendant also asserts that his wish to see his ill mother and his incarceration in a state facility, despite serving federal time, constitute extraordinary and compelling reasons for a sentence reduction. *See* Doc. 216 at 6. These circumstances do not justify a sentence reduction. *See generally* U.S. Sent'g Guidelines Manual § 1B1.13(b). However, the Court observes that if Defendant wishes to visit his mother, he may be able to request a furlough for that purpose from his facility.
²⁵ Doc. 205 at 53-54; Doc. 205-1 at 4; Doc. 205-2 at 4; Doc. 216 at 5.

with Defendant's statements regarding his medical conditions to the extent they are not corroborated by medical records, contending that these statements "are not credible" and cannot be relied upon.[26]

A defendant's medical status may constitute an extraordinary and compelling reason in limited circumstances, including when: (1) "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (2) "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death."[27]

Although the Court does not wholly disregard Defendant's self-reported medical issues, Defendant has not demonstrated that his medical circumstances rise to the level of an "extraordinary and compelling" reason for compassionate release. It is difficult to discern the precise nature and seriousness of Defendant's health conditions from the limited evidence available. The medical records filed with the Motion are both incomplete and not up to date, leaving the Court with little way to assess how Defendant is currently faring and whether he is being provided adequate medical care.[28] In addition, the records do not demonstrate that Defendant has attempted to seek treatment for several of his asserted conditions, including shortness of breath and broken bones. As far as the Court can tell, Defendant has been offered appropriate treatment for the medical conditions with which he has

---

[26] Doc. 218 at 67.
[27] U.S. Sent'g Guidelines Manual § 1B1.13(b)(1)(B)-(C).
[28] For example, the records demonstrate that that in December 2022, Defendant was directed to provide stool samples to attempt to diagnose the cause of his recurring rectal bleeding, and that the following month, Defendant complained about worsening bleeding. Doc. 205-14 at 59, 71. But the records do not contain the results of any testing or—apart from noting that Defendant was scheduled for "outside medical" for this issue—indicate what happened next. Doc. 205-14 at 71. Defendant reports that he has had surgery to remove polyps; however, it is unclear when this surgery took place or what its outcome was. Doc. 205-1 at 4.

Report & Rec. – Mot. for Compassionate Release 5
*United States v. Moreno*

been diagnosed, and he has been evaluated for the issues he has brought to his providers' attention.[29] Defendant may well be in less-than-ideal health, but he has not shown that he is unable to provide self-care,[30] that his facility is failing to provide him the care he needs, or that he suffers from a type of condition serious enough to warrant early release.[31]

The Court therefore finds that Defendant has not established that his health status constitutes an extraordinary and compelling reason for a sentence reduction.

2. Conditions of confinement

Defendant further insists that he is "repeatedly catching Covid 19 and being locked in [his] cell whereas [he] ha[s] seen other people get released."[32] Defendant attaches documentation of his placement in administrative segregation due to COVID-19 concerns on three separate occasions between June 2022 and January 2023.[33]

This argument is unpersuasive because Defendant has not shown that these restrictions, brought on by a global pandemic, are unique to him. On the contrary, "nearly every incarcerated person[] has experienced limitations" as a result of the

---

[29] *See* Doc. 205-14 at 23 (informing Defendant that he had been ordered a "cardiac diet" for a year), 37 (listing Defendant's prescriptions and the reasons for each prescription), 41 (informing Defendant that his "last vital sign check [was] within normal range" and noting a new order for "updated labs to check [Defendant's] blood, liver, thyroid, ect. [sic]"), 43 (indicating that Defendant's "blood pressure [was] in the normal range when [he] take[s] it as directed" and that "[t]here were no concerning finding[s] on [Defendant's] labs").

[30] To the contrary, Defendant marked "no" in the section of the form motion asking if he "require[s] assistance with self-care such as bathing, walking, toileting." Doc. 205-2 at 4.

[31] *See United States v. Thomas*, No. 3:17-cr-00051-SLG, 2021 WL 3924724, at *2 (D. Alaska Sept. 1, 2021) (interpreting former version of § 1B1.13 to "suggest[] that medical compassionate release is appropriate only for those inmates who need immediate release due to serious medical issues"). The Court finds that the fact that Defendant has previously contracted COVID-19 while incarcerated is not an extraordinary and compelling reason for early release, particularly as Defendant has been vaccinated and his underlying medical conditions appear to be well managed. *See* Doc. 205-14 at 53; *see also, e.g., United States v. Wills*, 541 F. Supp. 3d 1185, 1190-91 (D. Or. 2021) (concluding that the defendant had not satisfied the extraordinary and compelling standard because he had been fully vaccinated against COVID-19, which "minimize[d] any increased risk he face[d] due to his medical conditions").

[32] Doc. 205-1 at 4.

[33] Doc. 205-14 at 11-17, 31-35, 65-69. The Court notes that this documentation does not indicate that Defendant actually suffered from COVID-19 in each instance. Rather, Defendant denied suffering from any communicable disease during his first period of administrative segregation, and the recorded reason for his second such period was a "close contact." *Id.* at 17, 31.

COVID-19 pandemic, such as greater isolation and reduced programming.[34] "Conditions that are shared by nearly every inmate in the country are not extraordinary and compelling" for purposes of compassionate release.[35] As a result, "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances."[36]

The Court therefore finds that Defendant's placement in administrative segregation as a measure to mitigate the spread of COVID-19 is not an extraordinary and compelling reason for a sentence reduction.

### 3. Caretaking responsibilities

Defendant also asserts that he is the only appropriate caretaker for several children: his two daughters, ages 7 and 11, and his deceased brother's children.[37] Defendant states that many of his family members have died since he began his term of incarceration, leaving him as the only appropriate caretaker.[38]

A defendant's family circumstances may constitute an extraordinary and compelling reason for a sentence reduction when "the caregiver of the defendant's minor child" dies or becomes incapacitated, or when a similar situation leaves the defendant as "the only available caregiver" for another "immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member."[39]

On the record before the Court, Defendant has failed to demonstrate that he is the sole available caretaker for his or his brother's children. Defendant indicates that he had full or primary custody of his older daughter before his incarceration

---

[34] *Thomas*, 2021 WL 3924724, at *2.
[35] *Id.*
[36] *Id.* (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 290–91 (W.D. La. 2020)).
[37] Doc. 216 at 5-6; Doc. 205-1 at 4-5.
[38] Doc. 216 at 6; Doc. 205-1 at 5.
[39] U.S. Sent'g Guidelines Manual § 1B1.13(a)(3)(A), (D) (defining "immediate family member" as a defendant's child, spouse, registered partner, parent, grandchild, grandparent, or sibling).

and that she relied solely on him at that time, but he does not explain where his daughters reside or whose care they are in now.[40] Similarly, Defendant only vaguely references his deceased brother's children and does not describe, apart from asserting generally that "[m]any of [his] family members and friends have died since this false wrongful imprisonment," how he might be these children's lone appropriate caretaker.[41] In short, Defendant's Motion lacks adequate detail for the Court to determine whether something has befallen his children's caregiver or whether Defendant is the only appropriate caretaker for his brother's children.[42]

The Court therefore finds that Defendant's family circumstances do not constitute an extraordinary and compelling reason for a sentence reduction.

### 4. Changes in the law

Defendant additionally submits that there have been changes in the law since his sentencing that would downgrade his criminal history category and sentencing range if calculated today, and that these changes qualify as an extraordinary and compelling reason for a sentence reduction.[43]

First, Defendant appears to contend that his continued imprisonment is "wrongful" because his criminal history points calculated at sentencing accounted for a 2014 conviction for an Alaska state law offense involving marijuana possession.[44] Defendant points out that since his sentencing, Alaska has legalized marijuana at the state level and President Biden has pardoned federal convictions

---

[40] *See* Docs. 205-1 at 4, 219 at 2.
[41] *See* Doc. 205-1 at 5.
[42] *See United States v. Bolden,* No. No. CR16-320-RSM, 2020 WL 4286820, at *5 (W.D. Wash. July 27, 2020) (finding that the defendant failed to demonstrate that his spouse was incapacitated such that she could not care for herself or for their minor child, after considering the spouse's unverified statements regarding her medical conditions); *United States v. Beebe,* No. 1:19-cr-00002-TMB, 2023 WL 7183886, at *2 (D. Alaska Nov. 1, 2023) (finding that the defendant was the only available caregiver for his father, who had physical assistance needs, after ruling out two other potential caregivers who had medical conditions rendering them unable to assist); *see also* Fed. Bureau of Prisons, Program Statement No. 5050.50 at 7, 10 (Jan. 17, 2019) (explaining that when BOP reviews a compassionate release request based on family circumstances, the defendant should "provide[] adequate information and documentation" as described in the program statement and, where appropriate, should "demonstrate that the inmate is the only available caregiver").
[43] Doc. 205-1 at 5; Doc. 216 at 9-11.
[44] *See* Doc. 205-1 at 4-5; Doc. 73 at 14.

Report & Rec. – Mot. for Compassionate Release    8
*United States v. Moreno*

for simple marijuana possession offenses.[45] Second, Defendant states that the Sentencing Commission's November 2023 amendments to the Guidelines Manual "remove 'status' points for most defendants, including Mr. Moreno," who received two such points at sentencing "by virtue of being on supervision at the time of the . . . offense."[46] Defendant maintains that if this change were applied today, his criminal history level would drop from IV to III, which would, in turn, reduce his sentencing range from 100-125 months to 87-108 months.[47]

The amended § 1B1.13 policy statement bars courts from considering post-sentencing changes in the law when determining whether an extraordinary and compelling reason exists, unless a defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment."[48] If this "unusually long sentence" exception applies, a court may consider a change in the law, "but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."[49] If the "unusually long sentence" exception does not apply, then a court may consider a change in the law only if a defendant can "otherwise establish[] that extraordinary and compelling reasons warrant a sentence reduction under this policy statement," and only "for purposes of determining the extent of any such reduction."[50]

Because Defendant has not served 10 years of an "unusually long sentence" or met his burden to show extraordinary and compelling reasons aside from any ostensible changes in the law, the amended policy statement precludes the Court from considering his arguments on this point. Defendant asserts that a retroactive

---

[45] Doc. 205-1 at 5; *see also* AS 17.38.020; Proclamation No. 10,467, 87 Fed. Reg. 61441 (Oct. 6, 2022).
[46] Doc. 216 at 9.
[47] *Id.* at 11.
[48] *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(6), (c). The term "unusually long sentence" is not defined.
[49] *Id.* § 1B1.13(b)(6). This provision also notes that a "change in the law" does not include "an amendment to the Guidelines Manual that has not been made retroactive." *Id.*
[50] *Id.* § 1B1.13(c) (emphasis added).

change to the Guidelines Manual, such as the removal of status points from a defendant's criminal history, "should be enough to establish a basis for [compassionate release]."[51] The Court disagrees with this interpretation of the amended policy statement. Though it is true that the Court has a certain degree of latitude when determining what constitutes extraordinary and compelling reasons for a sentence reduction,[52] Defendant disregards the policy statement's clear prohibition on finding any change in the law to be extraordinary and compelling unless the "unusually long sentence" exception applies.

The Court thus finds that any changes in the law since Defendant's sentencing do not constitute an extraordinary and compelling reason for a sentence reduction.

### 5. Conclusion

In sum, the Court finds that on the record before it none of the reasons offered by Defendant—whether considered separately or together—meet the "extraordinary and compelling" threshold for compassionate release. Denial of the Motion is appropriate on this ground alone.

## C. Section 3553(a) Factors

Even if Defendant had shown extraordinary and compelling reasons for a sentence reduction, Defendant would still need to show that the § 3553(a) factors weigh in favor of a sentence reduction. "[T]he § 3553(a) factors are a lens through which the Court views the continued validity of the imposed sentence."[53]

Defendant maintains that the § 3553(a) factors support his early release, reasoning that he will be adequately deterred from engaging in further criminal conduct by the significant portion of his sentence he has served to date, that he is

---

[51] Doc. 216 at 10-11 n.5.
[52] *See* U.S. Sent'g Guidelines Manual § 1B1.13(b)(5) (setting forth catch-all provision that permits a finding of extraordinary and compelling reasons where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of § 1B1.13(b)], are similar in gravity to those described in paragraphs (1) through (4)").
[53] *United States v. Rodolph*, No. 3:16-cr-00048-SLG-1, 2023 WL 3467493, at *2 (D. Alaska May 15, 2023).

Report & Rec. – Mot. for Compassionate Release   10
*United States v. Moreno*

"better suited for medical care on the outside," and that his supervision following release will "ensur[e] society is protected."[54] In contrast, Probation believes that Defendant's early release would not satisfy the § 3553(a) factors, particularly the protection of the public, and notes that Defendant is still awaiting sentencing in two State of Alaska cases.[55] Probation references Defendant's history of methamphetamine use and points out that despite not being charged with an offense, Defendant admittedly shot and killed an individual in 1993 in "'mutual combat' that resulted in a long-standing family feud."[56]

It is the Court's view that a sentence reduction would not meet the § 3553(a) factors. At sentencing, the District Court observed that Defendant had directed two of his cousins to bring a "large quantity of methamphetamine . . . up [to Alaska]" in their bodies, conduct that the District Court described as "very troubling."[57] The District Court further "agree[d] with the Government's perspective as to the severity of th[e] crime" and found that Defendant posed a "high risk" of committing further crimes in the future.[58] Aside from Defendant's conclusory statement that the time he has served will act as sufficient deterrence, Defendant has offered no reason for the Court to believe that is the case. In fact, the numerous informational and disciplinary reports Defendant has received while in custody, including for fighting, refusing to obey direct orders of staff, and threatening to "shank" his attorney, suggest otherwise.[59] Moreover, the mere fact that Defendant will be subject to supervision after his eventual release does not dismiss the District Court's still-valid concerns about the need to protect the public. This is especially so given that Defendant committed the offense in this case while on probation in a state case.[60]

The Court therefore finds that the § 3553(a) factors do not support a sentence

---

[54] Doc. 216 at 14.
[55] Doc. 219 at 1, 3.
[56] *Id.* at 3.
[57] Doc. 87 at 69.
[58] *Id.* at 70.
[59] *See* Doc. 219 at 1-2.
[60] *See* Doc. 73 at 14.

Report & Rec. – Mot. for Compassionate Release 11
*United States v. Moreno*

reduction at this time.

### D. Dangerousness

Finally, the Government insists that Defendant poses a danger to other people and that this dangerousness serves as another independent ground to deny the Motion. The Government asserts that Defendant's criminal history, which includes multiple instances of sexually abusing children, evinces a "theme of menacing and exploiting vulnerable people," and states that Defendant has "offer[ed] no reason to believe he has changed."[61]

The amended § 1B1.13 policy statement requires a court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[,]" before reducing a defendant's term of imprisonment.[62] Before the amendment, this provision was not binding, though courts often considered the risk defendants posed to the public "under the umbrella of § 3553(a)."[63] The Court agrees with the Government that in light of the amendment to the policy statement, a finding as to a defendant's dangerousness is now a prerequisite for granting a sentence reduction. Because the Court is disinclined to recommend a sentence reduction on the record before it, the Court declines to make such a finding at this time.

//
//
//
//
//
//

---

[61] Doc. 218 at 7-8.
[62] U.S. Sent'g Guidelines Manual § 1B1.13(a)(2).
[63] *United States v. Nava*, No. CR 10-134-BLG-SPW-1, 2023 WL 8281596, at *4 n.4 (D. Mont. Nov. 30, 2023); *see also Aruda*, 993 F.3d at 799 (observing that a dangerousness finding "is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but is part of the Sentencing Commission's [then-effective] policy statement," which the court determined was non-binding).

Report & Rec. – Mot. for Compassionate Release    12
*United States v. Moreno*
Case 3:16-cr-00032-SLG-KFR    Document 220    Filed 12/29/23    Page 12 of 13

IV. Conclusion

For the foregoing reasons, this Court recommends that Defendant's Motion or Compassionate Release be DENIED without prejudice.

DATED this 29th day of December, 2023, at Anchorage, Alaska.



s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

NOTICE OF RIGHT TO OBJECT

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[64] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[65]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[66] A response to the objections may be filed within seven (7) days after any objection is filed.[67] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[68]

---

[64] 28 U.S.C. § 636(b)(1)(B).
[65] *Id.* § 636(b)(1)(C).
[66] *Id.*; L.M.J.R. 7(a)(1).
[67] L.M.J. R. 7(a)(2).
[68] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

Report & Rec. – Mot. for Compassionate Release 13
*United States v. Moreno*